NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLOS SEBASTIAN WOODLEY. <br><br> Plaintiff, <br><br> v. <br><br> P.O. JOSEPH AL-AYOUBI, P.O. J. HERRMANN, HACKENSACK POLICE DEPARTMENT, <br><br> Defendants. | Civ. Action No. 09-1403 (KSH) <br><br><br><br> **OPINION** |

**KATHARINE S. HAYDEN, U.S.D.J.**

**I. Introduction**

In this civil rights case, plaintiff Carlos Woodley alleges that he was beaten during the course of an arrest in Hackensack and that false charges were filed against him. Now before the Court is a motion by defendants—the City of Hackensack Police Department and two of its officers—for summary judgment. [D.E. 34.]

**II. Facts**

Woodley filed a pro se complaint on March 25, 2009, asserting claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and excessive force against three defendants: (1) Officer Joseph Al-Ayoubi; (2) Officer J. Herrmann; and (3) the City of Hackensack Police Department. Woodley alleges that Al-Ayoubi physically assaulted him both during an arrest and at the police station immediately thereafter, causing an injury that required stitches. (Compl. at 4.) He further alleges that Al-Ayoubi had no probable cause to stop or detain him, that Al-

1

Ayoubi lied in the police report, and that Al-Ayoubi filed false charges against him. (*Id.*) Woodley also asserts that Herrmann, who assisted in the arrest, was complicit in lying in the police report and filing false charges against Woodley. (*Id.* at 5.) Woodley names the Police Department as a defendant, but does not make any factual allegations against it. He seeks compensation for pain and suffering, time spent in jail, medical expenses, emotional distress, the loss of personal belongings, and mental anguish. (*Id.* at 7.)

Woodley was arrested on May 1, 2008, in Hackensack, New Jersey, at the intersection of Prospect Avenue and Terry Street. (*Id.* at 6.) The defendants and Woodley present diverging accounts of the events that led to and followed the arrest. According to the police report, Herrmann and Al-Ayoubi stopped Woodley because he was veering in and out of traffic on his bicycle. (Police Report, attached to Cominsky Certif. as Ex. B.) Al-Ayoubi wrote in the report that he approached Woodley to see why he was riding carelessly and that as he approached, Woodley was sweating profusely and spoke in a very nervous manner. (*Id.*) The report states that Woodley placed a small clear bag containing a white substance, which Al-Ayoubi believed to be crack-cocaine, in his mouth, and that when Al-Ayoubi ordered Woodley to take the bag out of his mouth, he refused. (Defs.' Statement of Material Facts, ¶¶ 5–8.) The report states that Al-Ayoubi then attempted to remove the bag from Woodley's mouth for Woodley's own safety. (Police Report.) At that point, according to the police report, Woodley punched Al-Ayoubi on the left shoulder. (*Id.*) Al-Ayoubi informed Woodley that he was under arrest and told him to place his hands behind his back. (*Id.*) Woodley swung his arms at the officers, who then wrestled him to the ground, purportedly causing him to hit his chin on the sidewalk and suffer a lip laceration. (*Id.*) The police report states that Woodley was transported to the Hackensack University Medical Center because he had "swallowed the bag." (*Id.*) He was charged with

possession of crack-cocaine, aggravated assault, destruction of evidence, and resisting arrest. (Defs.' Statement of Material Facts, ¶ 14.)

Woodley's account differs significantly. He states that after he was stopped, Herrmann told him to get off of his bicycle and put his hands on the squad car. (Probable Cause Tr., attached to Compl., 10:1–4.) While Woodley's hands were on the car, Herrmann patted him down and searched his jacket. (*Id*. 10:4–18.) According to Woodley, he asked Herrmann why he was stopped and Herrmann responded by shoving Woodley against the car. (*Id*. 10:24–11:10.) At this point, Woodley states, Al-Ayoubi ran up and kneed him in the groin two or three times. (*Id*. 11:11–19.) Woodley contends that he did not punch the officers but may have swung his arms to protect himself. (*Id*. 11:20–24.) Immediately after his arrest, Woodley states, the defendants took him straight to the police station, and not to the hospital. (*Id*. 12:8–9.) When they arrived at the police station, Al-Ayoubi allegedly took Woodley into a corridor, shoved him against a wall, and "slugged" him in the chin with a closed fist, all while Woodley was handcuffed. (*Id*. 12:14–13:18.) Woodley was then taken into an interrogation room, where he spoke to an unnamed sergeant. (*Id*. 13:22–14:23.) He asked the sergeant what he was being charged with, and the sergeant responded, "I don't know yet." (*Id.*) The sergeant then left and Al-Ayoubi allegedly entered, put on black gloves, and punched Woodley two more times in the chin, causing the laceration in his gums and inner lip. (*Id*. 14:25–16:1.) An ambulance then picked Woodley up from the police station and transported him to Hackensack University Medical Center where he received stitches in his mouth. (*Id*. 18:4–23.) The defendants do not acknowledge, in either of their briefs, Woodley's claim that Al-Ayoubi assaulted him at the police station.

Woodley pleaded guilty to third-degree resisting arrest before Judge Harry G. Carroll on December 11, 2008. (Plea Hearing Tr., 3:7–4:18.) The other three charges were dismissed. (*Id.*) At his plea hearing, Woodley admitted to physically resisting arrest so that the officers could not get his hands behind his back. (Plea Hearing Tr., 11:11–15.)

On July 7, 2008, Woodley filed a criminal complaint against Al-Ayoubi for the alleged assault at the police station. (Compl. at 5.) At a probable cause hearing held on October 2, 2008, Judge Roy McGeady found there was probable cause to believe that Al-Ayoubi had assaulted Woodley, and he issued a summons to Al-Ayoubi for simple assault. (Probable Cause Tr., attached to Compl., 24:23–25:10.) The charge against Al-Ayoubi was dismissed in municipal court. (Defs.' Statement of Facts ¶ 18.) Neither side details why the charge was dismissed, but the defendants summarily state that "[t]he simple assault charge did not relate to the time when Plaintiff was arrested by Defendant Police Officer Joseph Al-Ayoubi." (*Id.* ¶ 17.)

The defendants filed a motion for summary judgment on January 26, 2011,[1] arguing that Woodley's false arrest claim must fail because the officers had probable cause to arrest him, that the malicious prosecution claim must fail because the criminal proceeding did not end in Woodley's favor, and that the excessive force claim must fail because the officers used only the force that was necessary. (Moving Br. at 2.) Furthermore, defendants argue that because no factual allegations are made against City of Hackensack Police Department, the claims against it must be dismissed. (*Id.*) Woodley contends that defendants have failed to show that there are no genuine issues of material fact and that the City of Hackensack Police Department can be held liable. (Opp'n Br. at 1.)

---

[1] Defendants assert that there has been very limited discovery in this case because Woodley never provided Rule 26 disclosures, answers to interrogatories, or documents defendants requested. (Moving Br. at 1.) The docket does not reflect any request for sanctions by defendants, and they have chosen to base their summary judgment motion on the limited documents available. (*Id.* at 2.)

4

**III. Summary Judgment Standard**

Under Fed. R. Civ. P. 56(c), a court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A factual dispute is material if it "might affect the outcome of the suit under the governing law," and it is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S 242, 248 (1986). "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana v. Kmart Corp.*, 260 F. 3d 228, 232 (3d Cir. 2001) (citing *Williams v. Borough of West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989)). The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading"; its response, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)) (internal quotation marks omitted).

As an initial matter, defendants contend that Woodley's response to their brief is procedurally deficient because Woodley did not provide a statement of material facts pursuant to L. Civ. R. 56.1 and because his factual arguments are not based on any documents exchanged in discovery or testimony given in depositions. (*Id.*) Defendants therefore request that their statement of material facts be deemed undisputed. (*Id.*)

Federal courts "'have traditionally given pro se litigants greater leeway where they have not followed the technical rules of pleading and procedure.'" *Folsom v. Superior Court of New Jersey, Middlesex Vicinage*, 2008 WL 1782236, at *4 (D.N.J. Apr. 17, 2008) (Sheridan, J.)

5

(quoting *Tabron v. Grace*, 6 F. 3d 147, 153 (3d Cir. 1993)).  As such, "[w]here a nonmoving pro se litigant fails to file a responsive Local Civil Rule 56.1 statement of undisputed material facts, a court may draw the relevant facts underlying the claims from available sources such as the complaint, deposition testimony, the moving litigant's Local Civil Rule 56.1 statement of undisputed material facts and supporting exhibits." *Athill v. Speziale*, 2009 WL 1874194, at *2 (D.N.J. June 30, 2009) (Wigenton, J.); *see also Folsom*, 2008 WL 1782236, at *4 (holding that although plaintiff failed to submit a response to defendant's Rule 56.1 statement of material facts, he asserted his own version of the facts in his submissions to the court and thus, the facts adduced by plaintiff that varied from defendant's Rule 56.1 statement were deemed denials of defendant's statement of facts).

As a *pro se* litigant, Woodley is held to a more lenient standard than a licensed attorney would be.  In addition to his complaint, he has provided the Court with a transcript of the probable cause hearing, explained his own firsthand account of the events surrounding his arrest, and pointed to supportive evidence contained in defendants' exhibits.  Therefore, to the extent the facts contained in these materials vary from defendants' statement of facts, they will be deemed denials of defendants' statement of facts.

### IV. Claims Against City Of Hackensack Police Department

Defendants argue that the Police Department must be dismissed from the case because although Woodley named the Police Department as a defendant in his complaint, he did not state a specific claim against it.  (Moving Br. at 8–9.)  Woodley argues in his opposition brief that the Police Department has a custom of using excessive force, filing false charges, coercively interrogating defendants, and "overall police corruption."  (Opp'n Br.at 4.)

It is well accepted that "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691 (1978). In other words, there is no respondeat superior liability under § 1983. *Id.* However, a municipality can be sued directly under § 1983 if an action taken pursuant to a municipal policy or custom causes a constitutional tort. *Id.* It is when the "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

"A policy is made when 'a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Hansell v. City of Atlantic City*, 152 F. Supp. 2d 589, 609 (D.N.J. 2001) (quoting *Beck v. City of Pittsburgh*, 89 F. 3d 966, 971 (3d Cir. 1996)) (some internal quotation marks omitted). "A course of conduct is considered to be a 'custom' when, though not authorized by law, such practices of state officials are so permanent and well settled as to virtually constitute law." *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F. 2d 1469, 1480 (3d Cir. 1990)) (internal quotation marks omitted).

In the instant case, Woodley provides no evidence of a written policy that the Police Department abides by, nor does he offer evidence of any custom the Police Department follows. Rather, in his opposition brief, he asserts that several Hackensack police officers have filed civil rights suits against the Police Department, apparently referencing a lawsuit that pertains to the Police Department's employment practices. (Opp'n Br. at 5.) Woodley, however, provides no facts that establish a connection between those practices and his excessive force allegations. Therefore, the claims against the Police Department must be dismissed.

**V. False Arrest**

In support of his false arrest claim, Woodley argues that there was no valid reason for his arrest and no valid reason to even stop him because he was not committing a crime. (Opp'n Br. at 1, 3.) He further asserts that defendants have offered no evidence to indicate that he had "contraband concealed in his mouth," that defendants never retrieved anything from his mouth, and that the toxicology reports indicated that he was not using drugs and had not swallowed any drugs. (*Id.* at 3.) In sum, Woodley states that defendants had no probable cause to arrest him. (*Id.*)

Because Woodley was arrested and indicted for—and subsequently pleaded guilty to—resisting arrest, his arguments are unavailing. To state a § 1983 claim for false arrest, a plaintiff must establish that he was arrested by a state actor without probable cause. *Santiago v. City of Vineland*, 107 F. Supp. 2d 512 (D.N.J. 2000) (citing *Palma v. Atlantic County*, 53 F. Supp. 2d 743, 755 (D.N.J. 1999)). While a plaintiff need not prove a lack of probable cause, its existence will defeat a claim for false arrest. *Id.* "Probable cause need only exist as to any offense that could be charged under the circumstances," *Barna v. City of Perth Amboy*, 42 F. 3d 809, 819 (3d Cir. 1994) (citing *Edwards v. City of Philadelphia*, 860 F. 2d at 575–76), and an indictment constitutes prima facie evidence of probable cause. *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F. 3d 243, 251 (3d Cir. 2001). This prima facie evidence may be rebutted by "evidence that the [indictment] was procured by fraud, perjury or other corrupt means." *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989).

Woodley was indicted for and pleaded guilty to resisting arrest. (Plea Hearing Tr., attached to Cominsky Certif. as Ex. C.) This indictment is prima facie evidence that Al-Ayoubi and Herrmann had probable cause to arrest Woodley for resisting arrest, and Woodley has not

8

provided any evidence that the indictment was procured by fraud or perjury. In fact, Woodley concedes that he swung his arms at the officers. Therefore, his false arrest claim must be dismissed.

### VI. Malicious Prosecution Claim

> A malicious prosecution claim under § 1983 requires that the plaintiff show that:
>
> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Defendants argue that Woodley's malicious prosecution claim must fail because, since he pleaded guilty to resisting arrest, he cannot establish that his state criminal proceeding ended in his favor. (Moving Br. at 7.) Woodley counters that his "guilty plea cannot overshadow the physical assault that occurred while in custody at HPD." (Opp'n Br. at 4.)

"[A] prior criminal case must have been disposed of in a way that indicates the innocence of the accused in order to satisfy the favorable termination element" of a malicious prosecution claim. *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009). Accordingly, the Third Circuit has held that the dismissal of charges pursuant to a plea agreement does not constitute a favorable termination. *White v. Brown*, 408 F. App'x 595, 599 (3d Cir. 2010). In this case, the state dismissed three of the charges—possession of crack-cocaine, aggravated assault, and destruction of evidence—pursuant to a plea agreement under which Woodley pleaded guilty to resisting arrest. (Defs.' Statement of Material Facts ¶ 14; Plea Hearing Tr.) Because the plea agreement does not indicate Woodley's innocence, he cannot satisfy the favorable termination element and cannot succeed on his malicious prosecution claim.

**VII. Excessive Force**

      **A. Whether a Conviction for Resisting Arrest Bars a Claim of Excessive Force**

In *Heck v. Humphrey*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 486–487 (1994). However, the opposite is true, as well: where plaintiff's action "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487. Relying on this proposition, the Third Circuit in *Nelson v. Jashurek* determined that success on the plaintiff's excessive force claim would not imply the invalidity of his Pennsylvania conviction for resisting arrest. 109 F.3d 142, 146 (3d Cir. 1997). Examining Pennsylvania's resisting arrest statute, the Court recognized that one element is whether the accused employed "means justifying or requiring substantial force to overcome the resistance." 18 Pa. Cons. Stat. Ann. § 5104 (West 1983). It compared that statute to the Fourth Amendment reasonableness standard under which an arrestee's excessive force claims are measured. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Under that standard, a court examines whether the officer's use of force was objectively reasonable under the circumstances, as "viewed from the perspective of a reasonable officer on the scene," and taking into account such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at

10

296. The *Nelson* Court reasoned that even where substantial force is required to overcome an arrestee's resistance, "there undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable." 109 F.3d at 145. Therefore, the Court held that "a judgment in Nelson's favor would not throw the validity of the judgment of conviction in the criminal case into doubt." *Nelson*, 109 F.3d at 145. In *Lora-Pena v. F.B.I.*, the Third Circuit, relying on *Nelson*, stated that the § 1983 plaintiff's "conviction[] for resisting arrest . . . would not be inconsistent with a holding that the officers, during a lawful arrest, used excessive (or unlawful) force in response to his own unlawful actions." 529 F.3d 503, 506 (3d Cir. 2008)

In this case, Woodley pleaded guilty to third-degree resisting arrest. N.J.S.A. § 2C:29-2(a)(3)(a) provides that a person is guilty of third-degree resisting arrest "if he purposely prevents or attempts to prevent a law enforcement officer from effecting an arrest," and in so doing "[u]ses or threatens to use physical force or violence against the law enforcement officer or another." A conviction for this crime, therefore, does not entail a determination that the arresting officers did not use excessive force. As such, Woodley's conviction for resisting arrest "is not inconsistent with a finding that Defendants used excessive force to arrest him," *Weber v. Rodriguez*, 2011 WL 2555358, at *4 (D.N.J. June 27, 2011) (Kugler, J.), and *Heck* does not bar his excessive force claim.

### B. Whether Defendants Are Entitled to Summary Judgment on Woodley's Excessive Force Claim

Defendants argue that summary judgment is warranted on Woodley's excessive force claim because no reasonable jury could find that the force they used to arrest Woodley was unreasonable. (Moving Br. at 6–7.) They also argue, in conclusory fashion, that they are entitled to qualified immunity because no constitutional violation occurred and because, in any

11

event, whatever right they are said to have violated was not clearly established at the time the conduct occurred.  (*Id.*)

Because qualified immunity is a complete immunity from suit, a court must consider whether the defendant is entitled to immunity before reaching the merits.  *Giles v. Kearney*, 571 F.3d 318, 325–26 (3d Cir. 2009).  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  The qualified immunity inquiry, therefore, consists of two components: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the officers' conduct violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred.  "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Giles*, 571 F.3d at 325 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  "'If officers of reasonable competence could disagree on th[e] issue, immunity should be recognized.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The first prong of the test requires reference to the substantive standard for an excessive force claim.  "The test of reasonableness under the Fourth Amendment is whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'"  *Kopec v. Tate*, 361 F. 3d 772, 776 (3d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  "While the absence of physical injury does not necessarily signify that the force was not excessive, excessive force claims must be so egregious as to be constitutionally excessive, and the presence of some physical injury is relevant to that

determination." *Badalamente v. Monmouth Cnty. Prosecutor's Office*, 2011 WL 1898833, at *6 (D.N.J. May 17, 2011) (Wolfson, J.) (citing *Sharrar v. Felsing*, 128 F. 3d 810, 822 (3d Cir. 1997)).

Addressing whether the facts alleged in this case demonstrate that the officers' conduct violated a Constitutional right, the Court notes that the versions of the facts set forth by Woodley and the officers differ significantly. Woodley asserts that in addition to kneeing him in the groin during the arrest itself, Al-Ayoubi also beat him at the police station. (Opp'n Br. at 1–2.) Specifically, Woodley claims that Al-Ayoubi threw him against a wall and punched him in the chin while he was handcuffed in a hallway at the police station, and that Al-Ayoubi punched him in the face two or three times with a gloved fist in an interrogation room. (*Id.* at *2*.) Though Woodley's excessive force allegations focus almost entirely on what purportedly happened at the police station, the defendants offer no explanation of what occurred there. They state that after his arrest, Woodley was taken to Hackensack University Medical Center, but the medical records show that Woodley was taken to the hospital from the police station, rather than from the scene of the arrest. This discrepancy does not *per se* prove Woodley's claims, but it does tend to show that there is an unexplained gap in the sequence of events from which a reasonable jury could infer that Woodley's account is credible. Defendants' only apparent acknowledgment of the timeline Woodley describes is a brief statement that "[t]he simple assault charge did not relate to the time when Plaintiff was arrested by Defendant Police Officer Joseph Al-Ayoubi." (Defs.' Statement of Material Facts ¶ 17.)

Viewing the evidence in the light most favorable to Woodley, a reasonable jury could find that the officers violated Woodley's constitutional rights. Therefore, the Court cannot conclude that the officers' conduct was objectively reasonable as a matter of law. In a similar

case from this District, police officers transporting an arrestee from a holding cell at a police station to a police vehicle dragged the arrestee and grabbed and twisted his neck. *Morrison v. Phillips*, 2008 WL 4308215, at *11–12 (D.N.J. Sept. 16, 2008) (Simandle, J.). Judge Simandle determined that because the arrestee was not resisting, a reasonable jury could find that the officers' actions were unreasonable. *Id.* at *12. Likewise, in *Farquharson v. Pacelli*, Judge Sheridan found that where police officers questioning an arrestee at police headquarters sprayed the arrestee with pepper spray while trying to get him to stop chewing on what they believed was a baggie of drugs, there was a genuine issue of material fact as to whether the force the officers used was reasonable. 2006 WL 2882493, at *2–3 (D.N.J. Oct. 06, 2006). In this case, a reasonable jury could find that Al-Ayoubi's conduct in allegedly punching Woodley while he was restrained violated Woodley's rights. While defendants cast Woodley's injury as "a minor lip laceration," an excessive force claim does not require that the plaintiff sustain any minimum level of physical injury. *See Ference v. Township of Hamilton*, 538 F. Supp. 2d 785, 795 (D.N.J. 2008) (denying summary judgment on excessive force claim where plaintiff's shoulder injury required treatment with hot pack and Tylenol). Furthermore, as demonstrated by cases from this District, including those cited above, the right of arrestees not to be subjected to undue force at a police station is clearly established. *See Id.* at 812 (holding that officer who twisted arrestee's arms and slammed his head into a door while escorting him across police station lobby and into holding room was not entitled to qualified immunity). Therefore, the defendants are not entitled to qualified immunity, and their motion for summary judgment on the merits must be denied, as well.

**VIII. Conclusion**

Based on the foregoing, defendants' motion for summary judgment is granted as to Woodley's false arrest and malicious prosecution claims and as to all claims against the Police Department. Defendants' motion is denied as to Woodley's excessive force claim. An appropriate order will be entered.

September 27, 2011

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.